UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Anmarie Matson Wilson

        v.                              Civil No. 19-cv-511-LM
                                        Opinion No. 2020 DNH 065
Andrew Saul[1], Commissioner,
U.S. Social Security
Administration

**O R D E R**

    Pursuant to 42 U.S.C. § 405(g), Anmarie Matson Wilson seeks
judicial review of the decision of the Commissioner of the
Social Security Administration denying her application for
disability insurance benefits.  Wilson moves to reverse the
Commissioner's decision, contending that the Administrative Law
Judge ("ALJ") erred by assigning improper weight to the medical
opinions in the record.  In the alternative, Wilson challenges
the ALJ's authority to hear and decide her case on the ground
that the ALJ was not properly appointed under the Constitution
at the time his decision issued.  The Administration moves to
affirm.  For the reasons discussed below, the decision of the
Commissioner is affirmed.

---

    [1] On June 17, 2019, Andrew Saul was sworn in as Commissioner
of Social Security.  Pursuant to Fed. R. Civ. P. 25(d), he
automatically replaces the nominal defendant, Nancy A. Berryhill,
who had been Acting Commissioner of Social Security.

**STANDARD OF REVIEW**

In reviewing the final decision of the Commissioner under Section 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (citation omitted). Rather, the court "must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id. (citation, internal modifications omitted).

**DISABILITY ANALYSIS FRAMEWORK**

To establish disability for purposes of the Social Security Act (the "Act"), a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration.  20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  The first three steps are: (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).

If the claimant meets her burden at the first two steps of the sequential analysis, but not at the third, an ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite the limitations caused by her impairments.  Id. §§ 404.1520(e), 1545(a)(1).  At the fourth step of the sequential analysis, the ALJ considers the claimant's RFC in light of her past relevant work.  Id. § 404.1520(a)(4)(iv).  If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled.  See id.  If the claimant cannot

perform her past relevant work, the ALJ proceeds to the fifth step, at which it is the Administration's burden to show that jobs exist in the economy which the claimant can do in light of her RFC.  See id. § 404.1520(a)(4)(v).

## BACKGROUND

A detailed recital of the factual background can be found in Wilson's statement of facts (doc. no. 10-1) as supplemented by the Commissioner's statement of facts (doc. no. 12), and in the transcript of the administrative record (doc. no. 7).  The court provides a brief summary of the case here.

Wilson filed an application for disability insurance benefits on January 8, 2016, alleging a disability onset date of November 20, 2015.  Wilson alleged that she was disabled due to multiple sclerosis, pyoderma gangrenosum, anxiety, and depression.  Wilson meets the insured status requirements of the Act through September 30, 2021.

After the Administration denied Wilson's application, Wilson requested a hearing before an ALJ.  The ALJ held a hearing on May 24, 2017.  Wilson testified at the hearing, as did impartial vocational expert Christine Spaulding.

The ALJ issued an unfavorable decision on July 27, 2017. He found that Wilson had a combination of severe impairments

consisting of multiple sclerosis, anxiety, and depression.[2]   The
ALJ did not find that Wilson's combination of impairments met or
equaled the severity of the impairments listed at 20 C.F.R. §
404, Subpart P, Appendix 1.

The ALJ found that Wilson had the residual functional
capacity to perform less than the full range of light work as
defined at 20 C.F.R. § 404.1567(b), with specified additional
physical and mental limitations.   Wilson does not challenge the
ALJ's findings regarding her physical RFC.   As to her mental
RFC, the ALJ found that:

> [Wilson] has the ability to understand, remember, and
> carry out detailed instructions.  Persistence and pace
> may be affected on a temporary basis but not to an
> unacceptable level.  She would not be off task more
> than 10% of the workday.  She could sustain
> concentration, persistence, and pace for the typical
> 2-hour periods of an 8-hour workday and 40-hour
> workweek.

Admin. Rec. at 30.

In assessing Wilson's RFC, the ALJ found that Wilson's
testimony regarding the intensity, persistence, and limiting
effects of her reported symptoms was not fully consistent with
the available medical evidence.   The ALJ considered all of the
medical evidence of record, including the medical opinion of

---

[2] The ALJ did not find that Wilson experienced symptoms in
connection with her pyoderma gangrenosum that caused more than
minimal functional limitations during the period between her
claimed disability date and the date of his decision.

consulting psychologist William Jamieson, Ph.D., but gave little weight to the medical opinion of treating psychiatrist T.M. Cadorette, M.D., and partially rejected the medical opinion of consultative examining psychologist William Swinburne, Ph.D.

In response to hypothetical questions posed by the ALJ, Spaulding, the impartial vocational expert, testified to her opinion that a person with Wilson's age, education, past work experience, and RFC could perform the job duties of a cashier, a sales attendant, and a price marker.  Based on this testimony, the ALJ found at Step Five of the sequential process that Wilson was not disabled for purposes of the Social Security Act.

On July 15, 2018, the Appeals Council denied Wilson's request for review.  In consequence, the ALJ's decision became the Administration's final order for purposes of judicial review.  20 C.F.R. § 422.210(a); see also, e.g., Sims v. Apfel, 530 U.S. 103, 107 (2000).  This action followed.

## DISCUSSION

Wilson raises two claims of error on appeal.  First, she argues that the ALJ erred in weighing the medical opinions of treating psychiatrist Dr. Cadorette and consultative examining psychologist Dr. Swinburne.  Second, she argues that the ALJ was improperly appointed under the Appointments Clause of the United States Constitution at the time of the hearing, and therefore

lacked legal authority to issue a decision on behalf of the
Administration.   The court addresses each argument below.

I.   Medical Opinions

Wilson contends that the ALJ erred in weighing the medical
opinions in the record.   Specifically, Wilson argues that the
ALJ erred in: (1) affording little weight to treating
psychiatrist Dr. Cadorette's opinion and (ii) partially
rejecting consultative examining psychologist Dr. Swinburne's
opinion.

"An ALJ is required to consider opinions along with all
other relevant evidence in a claimant's record."   Ledoux v.
Acting Comm'r, Soc. Sec. Admin., Case No. 17-cv-707-JD, 2018 WL
2932732, at *4 (D.N.H. June 12, 2018).   "Medical opinions are
statements from acceptable medical sources that reflect
judgments about the nature and severity of [the claimant's]
impairment(s), including [the claimant's] symptoms, diagnosis
and prognosis, what [the claimant] can still do despite
impairment(s), and [the claimant's] physical or mental
restrictions."   20 C.F.R. § 404.1527(a)(1).

The ALJ analyzes the opinions of state agency consultants,
examining sources, and treating sources under the same rubric.
See id.; 20 C.F.R. § 404.1527(c).   The ALJ must consider "the
examining relationship, treatment relationship (including length

of the treatment relationship, frequency of examination, and
nature and extent of the treatment relationship), supportability
of the opinion by evidence in the record, [and] consistency with
the medical opinions of other physicians," along with the
doctor's expertise in the area and any other relevant factors.
Johnson v. Berryhill, Case No. 16-cv-375-PB, 2017 WL 4564727, at
*5 (D.N.H. Oct. 12, 2017).

### A.   Dr. Cadorette

Dr. Cadorette first began treating Wilson in April 2016,
Admin. Rec. at 424, after both her alleged disability onset date
(November 20, 2015) and the date she filed her application for
benefits (January 8, 2016).  At that time, Wilson reported to
Dr. Cadorette that her symptoms had "slowly worsen[ed]" after
she went on leave of absence from work in November 2015, and
that they had worsened more rapidly after March 1, 2016, the
date she took early retirement.  Id.  She reported that she was
"[v]ery upset" about her retirement, staying in bed, not doing
housework, and crying frequently.   Id.

At their first meeting, Dr. Cadorette assessed Wilson as
presenting with mild dysphoria and congruent affect.   Id. at
425-427.  However, she reported that Wilson's mood steadily
returned to normal (euthymic with a full range of affect) over

the course of the next few months.[3]  Id. at 418-422.  At no time
thereafter did Dr. Cadorette record in her treatment notes that
Wilson's mood was other than "euthymic," or free of symptoms of
depression.  Id.

Beginning with their first consultation, and continuing
through to their final session together, Dr. Cadorette recorded
her opinion at each session that Wilson had good insight, intact
judgment, good attention and concentration, intact memory, and
normal rate of speech.  Id. at 418-427.

In May 2017, Dr. Cadorette filled out a "Medical Source
Statement of Ability to do Work Related Activities (Mental)" for
Wilson.  Id. at 414-417.  Through her entries on the form, Dr.
Cadorette expressed her opinion that Wilson had moderate
limitations in her ability to make judgments on simple work-
related decisions and marked limitations in her ability to
understand, remember, and carry out complex instructions and her
ability to make judgments on complex work-related decisions.
Id. at 414.  Dr. Cadorette specified in support of her opinion
regarding Wilson's ability to understand, remember, and carry
out instructions that Wilson experienced impairment of her
short-term memory "when depressed."  Id.

---

[3] Dr. Cadorette recorded that by June 2016 "her depressive
symptoms were in full remission," and that she was staying busy
by helping a friend out and by taking babysitting jobs.  Id. at
419.

With regard to her ability to function in a work setting, Dr. Cadorette opined that Wilson had moderate limitations in her ability to interact appropriately with the public, mild limitations in her ability to interact appropriately with supervisors and co-workers, and marked limitations in her ability to respond appropriately to usual work situations and changes in a routine work setting.  Id. at 415.  Dr. Cadorette further opined that Wilson would have difficulty in completing tasks on a timely basis, due in part to the "cognitive impairment" caused by her multiple sclerosis.  Id.

Dr. Cadorette expressly opined that the limitations described in the May 2017 statement were first present in "summer/fall 2014."  Id.  Dr. Cadorette did not identify any medical evidence supporting her opinion regarding the onset date of Wilson's limitations.

The ALJ gave little weight to Dr. Cadorette's May 2017 opinion that Wilson had marked limitations in her ability to understand, remember, and carry out complex instructions, her ability to make judgments on complex work-related decisions, and her ability to respond appropriately to usual work situations and changes in a routine work setting.  Id. at 34.  The ALJ explained that he afforded little weight to Dr. Cadorette's May 2017 opinion because it was not consistent with either Dr. Cadorette's own treatment notes or with the mental status

findings of other medical sources throughout the entirety of the longitudinal treatment record.  Id.  Wilson now contends that the ALJ erred in affording Dr. Cadorette's May 2017 opinion little weight because Dr. Cadorette assessed her with dysphoria in connection with the consultation of April 2016, and because her opinion is purportedly otherwise uncontradicted by the medical evidence of record.

"[T]reating physicians' opinions are ordinarily accorded deference in Social Security disability proceeding." Richards v. Hewlett-Packard Corp., 592 F.3d 232, 240 n. 9 (1st Cir. 2010).  This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2).  A treating-source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2).  If, however, the treating-source opinion conflicts with other opinions in the record, the ALJ "may reject the opinion of the

treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence." Tetreault v. Astrue, 865 F. Supp. 2d 116, 125 (D. Mass. 2012) (internal quotation marks, citation omitted).[4]

Here, the ALJ provided good reasons for affording little weight to Dr. Cadorette's May 2017 opinion that Wilson had marked limitations in her ability to understand, remember, and carry out complex instructions, her ability to make judgments on complex work-related decisions, and her ability to respond appropriately to usual work situations and changes in a routine work setting, and supported his findings with substantial medical evidence of record.  First, as the ALJ correctly noted, Dr. Cadorette consistently assessed Wilson with good insight, intact judgment, good attention and concentration, intact memory, and normal rate of speech in connection with each and every visit she made to Dr. Cadorette's offices.  Admin. Rec. at 418-427.  Dr. Cadorette's contemporaneously maintained treatment notes therefore do not support her later-expressed opinion of marked impairments in Wilson's memory, attention, concentration, or judgment.  Moreover, to the extent Dr. Cadorette opined in May 2017 that Wilson suffered from impairment in memory "when

---

[4] An ALJ must give "good reasons" for rejecting a treating source's opinion.  20 C.F.R. § 416.927(c)(2); see also Polanco-Quinones v. Astrue, 477 Fed. Appx. 745, 746 (1st Cir. 2012) (unpublished disposition).

depressed," her treatment notes indicate that Wilson experienced only a single discrete period of mood dysphoria, when she was "very upset" about her March 2016 retirement from work.  Dr. Cadorette's treatment notes are therefore inconsistent with the conclusion that any depression-related cognitive deficits were present from 2014 onwards.

Second, as the ALJ also noted, the medical record as a whole contains no mental status findings supporting the conclusion that Wilson suffered from marked cognitive impairments.  In March 2016, consulting psychologist Dr. Jamieson reviewed the then-available medical evidence and found no evidence of understanding or memory limitations.  In addition, Dr. Jamieson found no evidence of significant limitations in concentration or persistence.  The only cognitive impairments for which Dr. Jamieson found support in the medical record were moderate limitations in Wilson's ability to maintain attention and concentration for extended periods or to perform scheduled activities, maintain regular attendance and be punctual within customary tolerances.  Id. at 84.

The record reviewed by Dr. Jamieson included the following. In May 2015, Wilson reported to her primary care physician that she was feeling "extremely healthy" and was able to do "everything she need[ed] and want[ed] to do."  Id. at 295. Wilson presented at that time with good insight and judgment.

Id. at 296.  In November 2015, at approximately the time of her alleged disability onset date, Wilson reported to her physician that she was very tired, slowed in her thinking, and having trouble performing the duties of what she characterized as her "high stress" job as a police dispatcher.  Id. at 293.  At that time, however, she continued to present with good insight and judgment.  Id.  As discussed above, Dr. Cadorette's treatment notes of consultations from April 2016 through January 2017 consistently indicate good insight, intact judgment, good attention and concentration, intact memory, and normal rate of speech.  Id. at 417-425, 427.  Wilson's treatment provider reported a normal mental status exam in February 2017.  Id. at 382.  There are no findings in the record with any tendency to support Dr. Cadorette's opinion of May 2017 that Wilson had marked cognitive limitations in her memory or judgment.

Wilson has not shown that the ALJ erred in weighing Dr. Cadorette's medical opinion.  To the contrary, the ALJ provided specific, legitimate, and convincing grounds for his conclusions.  Because the ALJ deployed the proper legal standards and based his conclusions on substantial medical evidence of record, no grounds exist for disturbing the Commissioner's final decision based on the weight the ALJ afforded Dr. Cadorette's May 2017 opinion.

B.   Dr. Swinburne

Consultative examining psychologist Dr. Swinburne saw
Wilson in March 2016.  Dr. Swinburne noted that Wilson was
appropriately groomed, attentive, and cooperative.  Id. at 302.
He noted that her speech was clear and fluent and of normal rate
and volume, and that her thinking was goal-directed and
logically sequenced, with no signs of disorder.  Id. at 303.
Upon examination, Dr. Swinburne opined that her short- and long-
term memory were intact, and that she functioned in the average
range of intellectual ability.  Id.  He found no impairments in
Wilson's capacity for social functioning.  Id. at 304.  He
opined that Wilson could be expected to demonstrate reasonably
good attendance in a job setting, and to be able to manage the
occasional stressors that accompany most jobs, including changes
in work responsibilities.  Id. at 305.  He further opined that
she would be able to interact appropriately with supervisors and
co-workers.  Id.  However, he additionally opined as follows:

> [I]t is not anticipated that she can keep her mind on
> the task on a sustained basis for a full eight-hour
> day's work or five days a week schedule.  Her mind
> will drift and she will become depressed and not be
> able to sustain her focus on the task.  She would need
> close supervision.

Id.

The ALJ gave no weight to Dr. Swinburne's opinion that
Wilson would require close supervision.  Id. at 34.  The ALJ

15

noted that the medical evidence, Wilson's work history, and Wilson's own testimony all consistently indicated that she got along well with others, worked independently for twenty years in a high stress job, and was able to take care of her own medical and social needs.  Id.  The ALJ did not expressly address Dr. Swinburne's opinion that Wilson would become depressed and unable to sustain focus for a full eight-hour workday or five-day workweek.

The opinion of a consultative examining psychologist must be assessed in light of the absence of a treating relationship between the examiner and the claimant, the support given for the opinion by the examiner, the consistency of the opinion with the record as a whole, and the examiner's relevant expertise.  See 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must give "good reasons" for rejecting the opinion of any acceptable medical source, including that of a consultative examining psychologist.  See 20 C.F.R. § 404.1527(c)(2).  Here, the ALJ correctly noted that Dr. Swinburne did not refer to any clinical findings in support of his opinion regarding Wilson's need for close supervision, Admin. Rec. at 34, that Wilson's consistent history of normal mental status assessments did not support the conclusion that she would require such supervision, id. at 295-296, 382, 417-427, that Wilson's testimony contained no suggestion that she was unable to work independently without

close supervision, id. at 47-66, and that there is no suggestion
in the record that Wilson ever required close supervision while
working in her former job position, id. at 177-207.  The ALJ
thus provided good reasons for rejecting Dr. Swinburne's opinion
regarding Wilson's need for close supervision.[5]

Moreover, it was not harmful error for the ALJ to fail
expressly to address Dr. Swinburne's opinion that Wilson would
be unable to remain on task for a full eight-hour day because
she would become "depressed" and her mind would drift.  First,
an ALJ is not required to address every piece of medical
evidence in the record, so long as the ALJ provides specific
reasons in support of his findings.  See Rodriguez v. Sec'y of
Health & Human Servs., 915 F.2d 1557 (1st Cir. Sept. 11, 1990)
(per curiam, table decision); Lord v. Apfel, 114 F. Supp. 2d 3,
13 (D.N.H. 2000).  Second, Dr. Swinburne's opinion that Wilson's
mind would "drift" due to depression was not supported by the

_____

[5] Consulting psychologist Dr. Jamieson noted Dr. Swinburne's
opinion regarding the need for close supervision and rejected it
as unsupported by relevant clinical findings.  However, Dr.
Jamieson also opined that Wilson would be able to complete a
normal workday or workweek with "reasonably supportive
supervision."  Admin. Rec. at 85.  The ALJ did not expressly
adopt that portion of Dr. Jamieson's opinion.  Although Wilson
does not expressly assign error to the ALJ's failure to adopt Dr.
Jamieson's opinion that she would benefit from reasonably
supportive supervision, the court notes sua sponte that it was
not harmful error for the ALJ to fail to do so, for the reasons
discussed in Dimambro v. US Soc. Sec. Admin., Acting Comm'r, Case
No. 16-CV-486-PB, 2018 WL 301090, at *8-10 (D.N.H. Jan. 5, 2018).

available medical evidence; as discussed above, Wilson's
treating physician for depression identified only one discrete
period of active depression symptoms in Wilson's medical
history, specifically in connection with her retirement from
work, which coincided precisely with the date of Dr. Swinburne's
examination.  Admin. Rec. at 417-427.  Third, the possibility
that Wilson might be unable to remain on task for the entirety
of an eight-hour workday was adequately captured by the ALJ's
assessment of Wilson's RFC, which provided that she might be off
task up to "10% of the workday" and could be expected to
"sustain concentration, persistence, and pace for the typical 2-
hour periods of an 8-hour workday and 40-hour workweek," id. at
30.  There is no error in capturing the essence of a limitation
identified by a medical expert rather than repeating the
expert's opinion verbatim.  See, e.g., Carver v. Colvin, 600
Fed. Appx. 616, 620 (10th Cir. 2015); Stubbs-Danielson v.
Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Bordelon v. Astrue,
281 Fed. Appx. 418, 423 (5th Cir. 2008).  Here, the ALJ provided
specific reasons for his assessment of Wilson's mental RFC,
Admin. Rec. at 26-35, and did not err by failing expressly to
address Dr. Swinburne's opinion regarding Wilson's ability to
remain on task for extended periods.

For these reasons, the ALJ's partial rejection of Dr. Swinburne's opinion provides no grounds for disturbing the Commissioner's final decision.

II.   The ALJ's Authority to Hear and Decide Wilson's Application

In June 2018, the Supreme Court found that Administrative Law Judges of the Securities and Exchange Commission exercised "significant discretion" in carrying out "important functions," and on that basis found that they were officers of the United States subject to the Appointments Clause of Article II of the Constitution.  Lucia v. S.E.C., 138 S. Ct. 2044, 2047-2048, 2052-2055 (2018).  Because "[t]he Appointments Clause prescribes the exclusive means of appointing 'Officers,'" providing that they may be appointed only by "the President, a court of law, or a head of department," the Lucia court held that an ALJ appointed by an SEC staff member lacked authority to hear and decide SEC cases.  Id. at 2051 (citing U.S. Const. Art. II, § 2, cl. 2).  On that basis, the Lucia court held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates h[er] case" is entitled to relief, specifically a new hearing before a properly appointed officer.  Id. at 2055 (emphasis supplied).

Although Lucia specifically addressed ALJs of the SEC, on July 16, 2018, the Acting Commissioner of the Social Security

Administration ratified the appointment of all Administration
ALJs as her own, "in order to address any Appointments Clause
questions involving SSA claims."  S.S.A. EM-18003 REV 2(B).

As noted, the ALJ in Wilson's case held a hearing on May
24, 2017, and issued an unfavorable decision on Wilson's
application on July 22, 2017.  The ALJ's decision became the
Commissioner's final decision on July 15, 2018, just one day
before the Acting Commissioner's ratification of the ALJs'
appointments.  Without specifying the circumstances of the ALJ's
initial appointment, and acknowledging that her challenge had
not been raised in the course of proceedings before the
Administration, Wilson now argues that the ALJ was improperly
appointed at the time of the hearing.  It is Wilson's position
that this case should therefore be remanded for a new hearing
before a properly appointed ALJ.  Without addressing its merits,
the Commissioner argues that Wilson forfeited her Appointments
Clause challenge by failing to raise it at any point during the
administrative proceedings.

The court agrees with the Commissioner that Wilson has
forfeited her Appointments Clause challenge.  First, as a
general rule an applicant's failure to raise an objection before
either the ALJ or the Appeals Council waives the objection for
purposes of judicial review.  See Mills v. Apfel, 244 F.3d 1, 8
(1st Cir. 2001) ("The impact of a no-waiver approach at the. . .

ALJ level . . . could cause havoc, severely undermining the administrative process"); see also 20 C.F.R. § 404.938(b)(1); 20 C.F.R. § 404.939; 42 U.S.C. § 405(g); Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 15 (2000) (Section 405(g) contains a non-waivable requirement that claimants present objections to the Administration before raising them on judicial review).  Indeed, the Lucia court specified a claimant could obtain relief on an Appointments Clause challenge if the challenge was "timely" brought before the ALJ's agency.  Lucia, 138 S. Ct. at 2055.

Second, virtually all courts to have considered the issue in the context of judicial review of Social Security Administration decisions have found that an Appointments Clause challenge is waived if not raised in the course of administrative proceedings.  See, e.g Taylor v. Saul, Case No. 1:16CV00044, 2019 WL 3837975, at *5 (W.D. Va. Aug. 15, 2019) (collecting cases).  Although the First Circuit has not yet spoken on the issue, the district courts of this circuit have likewise found that a claimant forfeits her Appointments Clause challenge by failing to raise it before the Administration.  See Myers v. Comm'r of Soc. Sec., case No. 1:19-CV-10010-ADB, 2020 WL 1514547, at *8 (D. Mass. Mar. 30, 2020) (collecting cases).

Third, the Administration has ruled, reasonably, that the Appeals Council will consider an Appointments Clause challenge

only if properly raised in prior administrative proceedings.
See S.S.R. 19-1P (Mar. 15, 2019).

Fourth, Wilson's argument that she could not have raised
her challenge in the course of administrative proceedings,
because Lucia was not decided until after the ALJ issued his
decision, is not persuasive.  The Appointments Clause issue was
already the subject of a split of circuit court authority at the
time the ALJ held the hearing in this matter, see Bandimere v.
SEC, 844 F.3d 1168, 1188 (10th Cir. 2016), and in any event the
Lucia court expressly stated that Supreme Court jurisprudence
dating from 1991 already stated "everything necessary to decide"
the Appointments Clause question, Lucia, 138 S. Ct. at 2053.
Moreover, the Appeals Council expressly directed Wilson to
submit "a statement about the facts and the law in this case or
additional evidence" on or before June 29, 2018, Admin. Rec. at
13; Lucia was decided on June 21, 2018, eight days prior to that
deadline.  Nothing prevented Wilson from raising her challenge
before the close of administrative proceedings.

Because Wilson did not raise her Appointments Clause
challenge in the course of administrative proceedings, she has
forfeited her right to do so on judicial review.  See Mills, 244
F.3d at 8.  Her challenge therefore provides no grounds for
disturbing the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, Wilson's motion to reverse (doc. no. 10) is denied, and the Commissioner's motion to affirm (doc. no. 13) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 24, 2020

cc:  Counsel of Record